IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| VS | CAUSE NO: 2:23-cr-20191-MSN |
| TADARRIUS BEAN | DEFENDANT |

**MEMORANDUM IN SUPPORT OF MOTION FOR A CHANGE OF VENUE OR IN THE ALTERNATIVE TO EXPAND THE JURY VENIRE OUTSIDE OF SHELBY COUNTY, TENNESSEE**

**INTRODUCTION**

Defendant Tadarrius Bean ("Defendant Bean") actively seeks a change of venue on the grounds of pervasive pretrial publicity. The extensive local coverage surrounding this case has unduly prejudiced the defendant. The pervasive prejudice jeopardizes the defendant's right to a fair trial by an impartial jury, making it impossible to locate twelve impartial jurors. Consequently, we pray this Court exercises its discretion and grants a Change of Venue in pursuit of justice. In the event this Court denies a total Change of Venue, we respectfully request this Court to expand the jury venire pool outside of Shelby County, Tennessee.

**BACKGROUND**

This Motion stems from pretrial publicity that has potentially biased the Western District of Tennessee jury venire. On January 7, 2023, Defendant Bean responded to a call involving a male fleeing from police officers. Despite being on a traffic stop involving a confirmed felony warrant, Defendant Bean prioritized the situation, letting the suspect go, in order to assist the Street Crimes Operation to Restore Peace in Our Neighborhoods Unit ("SCORPION"). He successfully apprehended the fleeing suspect, attempting to take control and arrest, with the help of other officers. The suspect vigorously resisted arrest. After finally detaining and arresting the

suspect and having called for emergency medical attention, the suspect was taken to the local hospital. Several days later, the suspect died. It is anticipated that the cause of death, the actions of the suspect, and the actions of the defendants will be contested at trial, set to commence on May 5, 2024.

Afterward, local news covered the incident for several days, without disclosing information about the police officers involved, and identified the victim as Tyre Nichols. On January 17, 2023, the community reported a memorial service for Tyre Nichols and anticipated the investigation's conclusion by Friday. On January 20, 2023, the City of Memphis released the names of officers involved in the case, identifying Defendant Bean as one of those officers. The U.S. Attorney's Office provided an update on the case on January 25, 2023.

In a televised one-on-one interview, Memphis City Police Chief Davis unequivocally expressed, "No doubt about it. This video is going to cause anger, emotions to rise, and you know, even to a point where the terms that I have used are appalling, inhumane." Subsequently, Chief Davis announced during the interview that the Scorpion Unit, associated with the involved police officers and designed to address high-violence crime areas, would be suspended. Following the interview, the mayor declared that the Scorpion Unit would be fully dismantled and cease to exist within the Memphis Police Department. These statements were released to local and national media outlets.

On February 7, 2023, the Memphis Police and Fire Department chiefs presented reform proposals at the Memphis City Council. The following day, local news reported initiating the decertification process for former officers linked to the case. By February 17, 2023, the media reported on the Nichols family reflected on the accused officers' first court appearance. Subsequent news articles delved into the incident's details within the local community. The case

gained national attention, featured on major news networks like CNN and Fox News, and spread across social media platforms like Facebook, Instagram, Twitter, and others. Notable pages like TMZ, Spiritual World, and The Shade Room covered the story. In addition to national social media platforms, local Memphis social media platforms heavily reported on the case, specifically Unapologetically Memphis, Thaddeus Matthews Show, local news social media platforms, and traditional local media outlets, including ABC, Fox 13, News Channel 3, and Action News 5.

False narratives emerged, perpetuated by the Memphis City government. These included rumors about a police officer's girlfriend dating Tyre Nichols, information that the city knew to be untrue. This misinformation triggered backlash on social media, further complicating the narrative. The City of Memphis failed to correct these false narratives, even though they constantly released more information regarding the case than they should. It has been nearly a year since the incident, yet with new updates from the case, it continues to gain attention and play on the public's emotions.

## LAW & ARGUMENT

Due to the pretrial publicity that Defendant Bean's case received, Defendant Bean is entitled to a fair and impartial jury. To ensure this right is upheld, a change of venue is necessary. The Sixth Amendment of the United States Constitution grants all citizens a right to "an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. "The constitutional standard of fairness mandates that a defendant be judged by 'a panel of impartial, indifferent jurors.'" *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Excessive pretrial publicity are grounds for a change of venue. *Skilling v. United States*, 561 U.S. 358 (2010). However, the court cited precedent that pervasive pretrial publicity does not inevitably lead to an unfair trial. *Id*. at 2902. Instead, the pretrial publicity must be so inflammatory or

accusatory as to presumptively create a trial atmosphere that had been entirely corrupted by press coverage. *Murphy*, 421 U.S. at 798 (discussing *Irvin v. Dowd*, 366 U.S. 717 (1961)). It is the defendant's responsibility to demonstrate the actual existence of such an opinion in the mind of the juror as it will raise the presumption of partiality. *Id.* at 800.

In *Skilling v. United States*, Jeffrey Skilling, a former executive of the Enron Corporation, found himself entangled in a corporate downfall as the company plunged into bankruptcy, causing a significant drop in its stock value. *Skilling*, 561 U.S. at 2899-2900. An investigation revealed an intricate conspiracy involving misleading records. *Id.* Skilling requested a change of venue, asserting that pervasive hostility towards him in Houston, along with extensive pretrial publicity, had tainted the pool of potential jurors, hindering his chance of a fair trial. *Id.*

The Court considered the size and characteristics of Houston, where the trial took place, with a jury pool of nearly 4.5 million individuals, making it possible to find 12 impartial jurors. *Id*. at 2915. Moreover, the Court noted that the news stories lacked confessions or blatantly prejudicial information, and the passage of four years since Enron's collapse had diminished media attention. *Id.* at 2916. Skilling's acquittal on nine substantive counts further indicated that the presumption of prejudice might be unfounded. *Id.* The Court cited precedent that pervasive pretrial publicity does not inevitably lead to an unfair trial. *Id.* at 2902. Ultimately, the stories about Enron, while extensive, did not create a lasting, vivid impression likely to produce prejudice, and Houston's size and diversity diluted the impact of media coverage. *Id.* at 2916. The Court also cited precedent that acknowledged that the likelihood of prejudice was reduced where venire was drawn from a pool of over 600,000 individuals. *Id.* at 2915. Further, while Skilling's co-defendant's decision to plead guilty before trial posed a risk of juror prejudice, the court mitigated this by delaying proceedings and inquiring about prospective juror exposure to

recent publicity, including news regarding Skilling's co-defendant. *Id.* at 2917. Ultimately, the Supreme Court upheld the District Court's decision to retain the trial venue. *Id.*

In *Rideau v. Louisiana*, Wilbert Rideau committed a bank robbery in Lake Charles, Louisiana, during which he kidnapped three bank employees and tragically killed one of them. *Rideau v. Louisiana*, 373 U.S. 723, 1418 (1963). Subsequently, Rideau underwent interrogation without legal representation, leading detectives to obtain a filmed confession without his consent. *Id.* This confession was broadcasted to the local community, reaching around 24,000 individuals. *Id.* The following day, the televised confession reached nearly 53,000 viewers, and a day after, the same television show rebroadcasted it to an additional 20,000 individuals who had already seen and heard the admission. *Id.* The confession, thus, reached an audience ranging from 24,000 to 53,000 people within the town. *Id.*

In response to the widespread exposure, Rideau sought a change of venue, arguing that he could not receive a fair trial in the city where the crime occurred, given its population of approximately 150,000 people. *Id.* Despite his plea, the trial court denied the motion, ultimately leading to Rideau's conviction by a jury. *Id.* However, the Supreme Court later overturned the trial court's ruling. *Id.* at 1420. The Court acknowledged that Rideau's admission of guilt had become ingrained in the minds of those who witnessed it, constituting actual prejudice. *Id.* at 1419. The Court held that denying the request for a change of venue, after the repeated and in-depth exposure of Calcasieu Parish residents to Rideau's detailed confession, amounted to a denial of due process. *Id.* at 1419-1420. The spectacle, viewed by tens of thousands, effectively became Rideau's trial, leading to his guilty plea for murder in the eyes of the public. *Id.*

If a total Change of Venue is denied, this Court should adopt the Eight Circuit analysis. The Eighth Circuit concluded that the pretrial publicity in the case did not create a

presumption of inherent prejudice. *United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001). Moreover, the district court implemented numerous precautions aimed at ensuring the selection of an unbiased jury. *Id.* These precautions included relocating the trial from Duluth to Minneapolis, forming a jury pool drawn from the entire state while excluding the Fifth Division (where the victim was abducted), sending questionnaires to prospective jurors to inquire about their exposure to pretrial publicity, and increasing the number of peremptory strikes available to each side. *Id.* Therefore, the court said the district could not abuse its discretion in denying Blom's pretrial motion for change of venue. *Id.*

Unlike in *Skilling*, at the time of the trial, only a year and four months will have elapsed since the incident. *Skilling* emphasized that four years had passed since Enron's collapse, diminishing the pretrial publicity. Further, in *Skilling*, the pretrial publicity was objective and unemotional. In our case, there was a one-on-one interview conducted prior to the release of the body cam footage, Chief Davis expressed, "No doubt about it. This video is going to cause anger, emotions to rise, and you know, even to a point where the terms that I've used is appalling, inhumane." Jackson Brown, *1 on 1 with MPD Chief C.J. Davis on Tyre Nichols, release of video depicting police violence*, LOCAL MEMPHIS (Jan. 27, 2023, 4:01 PM), https://www.localmemphis.com/article/news/crime/1-on-1-mpd-chief-cj-davis-tyre-nichols-video-release-police-violence/522-9ed8e0e2-9d92-45f6-86a1-b4f224584a3a. This information was disseminated to all news media outlets, reflecting a highly subjective and emotionally charged perspective. Additionally, certain news articles, notably those from NBC News, heavily emphasized emotional language in their headlines, such as, "Harrowing videos show police fatally beat Tyre Nichols, who cries out for his mother." This continuous use of subjective and emotional language instead of objective and neutral appeals further shaped the narrative

surrounding the incident. Therefore, if a person were to not think this incident was not horrific, their minds would be tainted before even watching it.

Similar to *Rideau*, Defendant Bean is also facing challenges as news and social media outlets have created a biased narrative. Although Rideau was actually prejudiced because his confession was released to nearly everyone in the area, Defendant Bean shall be presumed prejudiced because social media and news outlets have continuously created a one-sided biased narrative. The impact is intensified by the spread of false and misleading stories on social media, such as accusations that Defendant Bean lied about the situation or that the incident was related to a romantic entanglement involving one of the officers, the officer's alleged girlfriend, and the alleged victim. This widespread misinformation contributed to a tainted public perception of Defendant Bean. Furthermore, while the City of Memphis released information regarding the officers, it knowingly failed to release information regarding illegal contraband discovered in the alleged victim's vehicle.

The Government is expected to assert that the extensive pretrial publicity, given its national news coverage, makes it unlikely that any venue will have significantly different levels of impartiality. However, this argument is disingenuous if it is noted that coverage intensifies within the local viewing area, with news video clips of the incident and photographs of the officers shown every time the defendants have court in either federal or state charges. Because of the pretrial publicity generated in this case, it will be nearly impossible to find an impartial venire panel concentrated in Shelby County, Tennessee.

Although many arguments shape the notion that the venire questions will eliminate the biased jurors, that is not likely the case in this situation. The case received national media attention, along with local media attention. Further, Tyre Nichols has been martyred in many

sectors of Memphis, TN. With Memphis being an urban city and the surrounding area being more urban and suburban than rural, Tyre Nichols has likely become a household name in some homes. Whether it was someone who knew him from skateboarding, someone who saw the video, someone who watched the Chief of Police and Mayor make emotional and subjective statements, someone who only watches national or local media outlets, or someone who simply scrolls on social media, this case has reached the ears and eyes of Shelby County residents and has tainted their perception of the defendants. It is easy for a person to say they will not be biased, when in fact they will. However, it is this Court's responsibility to uphold justice and provide a fair and impartial jury, and no extensive screening questionnaire and follow-up voir dire will satisfy this. Changing the venue to a district outside of the original jurisdiction is the only way to provide that.

According to census.gov, Shelby County, TN, has an estimated population of 916,371 people in 2021. This is significantly fewer compared to the 4.5 million people selected for the jury pool in *Skilling*. Further, expanding from four counties to all twenty-one counties in the Western District of Tennessee will intensify the likelihood of obtaining a more fair trial. As shown in *Skilling*, the more people involved, the more likely it is to get an impartial jury venire.

If this Court does not grant a Change of Venue, we request an expansion of the jury venire pool. In *Blom*, the court explored alternative solutions to ensure a fair trial for Blom. These options involved the possibility of selecting jurors from the entire state while specifically excluding the original jurisdiction where the crime occurred. Defendant Bean should be offered the same option.

As demonstrated earlier, Defendant Bean is unlikely to secure an impartial jury if the jury is concentrated in the Western Division of the Western District of Tennessee due to pretrial

publicity. To rectify this potential constitutional violation, this Court should authorize a change of venue less predisposed and biased or in the alternative an expansion of the jury venire to include the entire Western District.

## **CONCLUSION**

Defendant Bean is entitled to a Change of Venue. This is imperative due to the pretrial publicity, the emotional ties between the City of Memphis and the case, statements made by numerous city public officials, the release of a video recording without accompanying extrinsic evidence offering the full context, and concerns about the adequacy of the current jury pool selection. The Court has a duty to ensure that Defendant Bean is afforded the right to an impartial jury in light of these circumstances. In the event that a Change of Venue is not granted, we request this Court to grant an expansion to the venire pool to the other twenty-one counties of the Western District of Tennessee.

For the foregoing reasons, Defendant Bean respectfully prays this Court grants his Change of Venue in this cause.

ATTORNEY FOR TADARRIUS BEAN

**/s/ John Keith Perry, Jr.**
John Keith Perry, Jr. , (024283)
**PERRYGRIFFIN, P.C.**
5699 Getwell Road
Building G, Suite 5 Southaven, MS 38672
Tele: (662) 536-6868
Email: JKP@PerryGriffin.com

## CERTIFICATE OF CONSULTATION

I, John Keith Perry, Jr., counsel for Defendant Tadarrius Bean, hereby certify that I contacted all counsel via email and/or telephone regarding this Motion. Counsels for Defendant Martin, Defendant Haley, and Defendant Smith.

**/s/ John Keith Perry, Jr.**
John Keith Perry, Jr.

## CERTIFICATE OF SERVICE

I, John Keith Perry, Jr., hereby certify on this day I electronically filed the foregoing Motion with the Clerk of the Court by using the CM.ECF system, which sent notification of such filing to all counsel of record this the 5th day of January, 2024.

**David Pritchard**
U.S. ATTORNEY'S OFFICE
Federal Building
167 N. Main St.
Ste. 800
Memphis, TN 38103
Email: david.pritchard2@usdoj.gov

**Forrest Christian**
DOJ-CRT
950 Pennsylvania Avenue, NW Building
Room 7116
Washington, DC 20530
Email: Forrest.Christian@usdoj.gov

**Kathryn Gilbert**
DOJ-CRT
950 Pennsylvania Ave NW
Washington, DC 20530
Email: kathryn.gilbert@usdoj.gov

**William D. Massey**
MASSEY & MCCLUSKY
3074 East Street
Memphis, TN 38128
Email: masseymccluskylaw@gmail.com

**Michael Stengel**
MICHAEL J. STENGEL, ATTORNEY AT LAW
619 South Cooper Street
Memphis, TN 38104
Email: stengel12260@mjspc.com

**Blake D. Ballin**
BALLIN BALLIN & FISHMAN
200 Jefferson Ave.
Ste. 1250
Memphis, TN 38103
Email: bballin@bbfpc.com


**Martin W. Zummach**
SPARKMAN ZUMMACH, P.C.
P.O. Box 266
Southaven, MS 38671-0266
Email: martin@sparkman-zummach.com

**/s/ John Keith Perry, Jr.**
John Keith Perry, Jr.
