IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | Criminal No. 2:23-cr-20191-MSN |
| | ) | |
| | ) | |
| **JUSTIN SMITH,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED STATES' RESPONSE
TO DEFENDANT HALEY'S MOTION IN LIMINE TO PROHIBIT WITNESSES FROM
INTERPRETING AUDIO AND VIDEO PORTIONS OF EXHIBITS**

The government respectfully submits that the Court should reject defendant Haley's last-minute effort to prevent the jury from hearing critical testimony in this case about what the defendants said and did on video, including testimony from witnesses who can identify the defendants' voices and attribute statements to them, and testimony from the defendants' trainers about whether the defendants were using trained techniques during the charged conduct. The government laid out the case law authorizing witnesses to testify about video in a motion filed two months ago. (ECF No. 331, United States' Motion *in Limine* to Admit Video Evidence.)

Defendant Haley first attempts to prohibit the United States from allowing its witnesses to identify voices that witnesses will hear on video. He asserts without citation that "playing a video and asking who said 'hit him' would clearly be prohibited." (ECF No. 553 at 2.) But Federal Rule of Evidence 901(b)(5) explicitly allows witnesses to offer "[a]n opinion identifying a person's voice—*whether heard firsthand or through . . . recording*—based on hearing the voice at any time

under circumstances that connect it with the alleged speaker." *Any* witness with knowledge of a defendant's voice, including witnesses who were not present when the original statements were made, can be asked whose voice can be heard saying "hit him" on the video. *See United States v. Simms*, 351 F. App'x 64, 69 (6th Cir. 2009) ("[T]he Federal Rules of Evidence allows voice identification by someone who became familiar with the voice at any time and does not place a time limitation on the familiarity.") (authorizing voice identification by investigating detective and parole officer). The Sixth Circuit has repeatedly explained that "[t]he standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. Pryor*, 842 F.3d 441, 451 (6th Cir. 2016) (quoting *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986)). For this reason, the Sixth Circuit has repeatedly approved of even case agents' identification of defendants' voices on recordings. *See, e.g.*, *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986); *United States v. Hogan*, 402 F. App'x 54, 59 (6th Cir. 2010) ("Agent Pierce's familiarization with Defendant's voice subsequent to the date of the recording is an adequate basis for voice identification under Federal Rule of Evidence 901.").

In this case, the government will call witnesses—including witnesses who were present for the statements in question, but also the defendants' supervisor and trainers, who were not—to identify voices heard on body-worn camera videos. The cases cited by defendant Haley are not to the contrary and do not bear the weight defendant Haley attempts to put on them. He conflates two issues: voice identification, and the interpretation of terminology. *No* case stands for the proposition that witnesses cannot identify voices heard on video. *See infra.* And as the United States has already explained, witnesses *can* properly testify about terminology heard on video. *See, e.g.*, *United States v. Martin*, 920 F.2d 393, 397 (6th Cir. 1990) (informant-witness on direct

examination properly testified about "what was meant by phrases that would have been clear in context to the person hearing them" on video) (emphasis removed); *United States v. Casteel*, 505 F. App'x 573, 576 (6th Cir. 2012) (case agent properly offered lay-opinion testimony about the meaning of recorded terms); *see also* ECF No. 419 at 2 n.2 (United States' Reply to Defendant Martin's Response to Government's Motion *in Limine* to Admit Video Evidence).

In *United States v. Edwards*, 707 F. App'x 332, 337 (6th Cir. 2017), cited by defendant Haley, the Sixth Circuit *approved* of a case agent's testimony "interpret[ing] words unique to the investigation and decipher[ing] ambiguous statements in a way that was useful to the jury." That "a case agent testifying as a lay witness may not explain to a jury what *inferences* to draw from recorded conversations involving ordinary language" is uncontroversial, but the government is not going to ask witnesses to testify about what *inferences* to draw from ordinary language. *Id.* (emphasis added). For example, the government will not ask the defendants' trainers what the word "hit" meant when the defendants yelled "hit him!" at their codefendants during the beating of Mr. Nichols. The jury knows perfectly well what that term meant. In contrast, the government *will* ask current and former law enforcement officers what the defendants meant when they bragged about hitting Mr. Nichols with "pieces" and about "rocking" Mr. Nichols, because such lingo may be "cryptic" to the jury. *United States v. Kilpatrick*, 798 F.3d 365, 380–81 (6th Cir. 2015). Such testimony is proper. *Martin*, 920. F.2d at 397; *Casteel*, 505 F. App'x at 576.

Defendant Haley also asserts without citation that witnesses should not be allowed to offer "an opinion on what can be seen on the video, such as where a blow landed." (ECF No. 553 at 2.) Of course, the government is not going to ask any witness to instruct the jurors about what they see on the video (and the defendants are also precluded from attempting to elicit such testimony, as the Magistrate Judge properly concluded; *see* ECF No. 536, United States' Trial Brief at 15–

3

16).  And neither party can ask trainers what the defendants' mental state was.  But, as the government has previously explained, witnesses with personal knowledge of what video depicts, including witnesses who were not present for the videotaped conduct, *can* testify about their rational perception of events depicted on video.  *United States v. Bell*, No. CR 17-20183, 2022 WL 981578, at *12 (E.D. Mich. Mar. 31, 2022) ("[T]here can be little dispute that witnesses depicted in the videos possess the requisite personal knowledge and rational perception to testify about the events depicted in the videos . . . . Further, where [a witness later] 'viewed the surveillance video with his own eyes,' his testimony 'about what the video showed would plainly have a rational basis in his own perception.'"); *United States v. Begay*, 42 F.3d 486, 502–03 (9th Cir. 1994) (testimony of witness, who was not present for events depicted in video, regarding events shown in the video was properly admitted because his testimony "would help the jury focus its attention on critical events depicted" in the video and could "help the jury discern correctly and efficiently the events depicted in the videotape"; rejecting argument that such testimony was cumulative or invaded the province of the jury); *United States v. Muhammad*, 512 F. App'x 154, 160-61 (3d Cir. 2013) (upholding testimony about events shown in surveillance video from non-eyewitness).

      The witnesses must be able to lay foundation for their testimony.  For one thing, the Court has already ruled that the government's use-of-force trainer-witnesses may, if properly qualified, testify as experts about whether the defendants' actions on video are consistent with MPD training and policy.  (ECF No. 516.)  These witnesses would be unable to testify about whether uses of force were consistent with training and policy unless they were able to characterize what they see on video.  For example, the defendants' trainers will offer testimony about what the defendants were trained, and what MPD policy said, about strikes to the head.  They should be allowed to

4

testify that the strikes to the head observed on video are inconsistent with MPD policy and training, but they cannot do that without first observing that the defendants struck Mr. Nichols in the head. Of course, if the jury watches the video and disagrees with such a characterization of where strikes landed, they are free to conclude otherwise. Likewise, the jury is free to disagree with a witness's characterization of what was said on the video, but there is nothing improper about a witness identifying what they see on a recording in order to testify about it. ECF No. 553 at 2. Just as jurors are permitted to use transcripts as an aid to understand recordings, *see* Sixth Circuit Criminal Pattern Jury Instruction 7.17; *United States v. Wilson*, 653 F. App'x 433, 445-46 (6th Cir. 2016), they are permitted to hear testimony from a witness that serves the same purpose. And while Defendant Haley cites Rule 1002's "best evidence" requirement, ECF No. 553 at 1, Rule 1002 is not relevant to this issue. *See Martin*, 920 F.2d at 397 & n.3 (6th Cir. 1990) (stating that a witness is permitted to testify about a conversation, even when a recording of that conversation is played for the jury, and that Rule 1002 "is not relevant to this situation"); *United States v. Branham*, 97 F.3d 835, (6th Cir. 1996) (rejecting defendant's argument that district court erred in allowing a witness "to summarize the content of the tape recordings, claiming that the tapes were the best evidence of the conversations which took place").

Respectfully submitted,

KEVIN G. RITZ
United States Attorney

DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103

|  | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division<br>U.S. Department of Justice |
|---|---|
| By: | s/ Kathryn E. Gilbert<br>FORREST CHRISTIAN<br>Deputy Chief<br>KATHRYN E. GILBERT<br>Special Litigation Counsel<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br>(202) 616-2430<br>kathryn.gilbert@usdoj.gov |

## CERTIFICATE OF SERVICE

      I, Kathryn E. Gilbert, hereby certify that on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System, which sent notification of said filing to defense counsel.

s/ Kathryn E. Gilbert<br>
KATHRYN E. GILBERT<br>
September 8, 2024