IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Criminal No. 2:23-cr-20191-MSN |
| | ) |
| | ) |
| **JUSTIN SMITH,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS FOR JUDGEMENT OF ACQUITTAL UNDER RULE 29**

The government opposes the defendants' oral motions[1] and defendant Smith's written motion for judgement of acquittal pursuant to Rule 29.

**I.    Legal Standard**

A court considering a motion for acquittal under Rule 29 must interpret the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt." *United States v. LaVictor*, 848 F.3d 428, 456 (6th Cir. 2017) (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)). "[G]iven that the district court must view the evidence in the light most favorable to the government, 'a defendant claiming insufficiency of the evidence bears a very heavy burden.'"

---

[1] The government addressed defendants Bean and Haley's specific arguments during oral argument and incorporates those arguments here. The government's arguments regarding sufficiency in response to defendant Smith apply equally to any sufficiency arguments his codefendants might raise.

*United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021) (*United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)).

## II. Argument

The government has provided more than sufficient evidence for a rational trier of fact to convict all three defendants. A nonexclusive summary of the government's evidence is provided below.

### A. Counts 1 and 2: Civil Rights Violations

To prove Counts 1 and 2, the government must prove that the defendants (1) acted under color of law; to (2) violate Tyre Nichols' constitutional rights; (3) willfully; and that (4) bodily injury and death resulted. That the defendants were acting under color of law is undisputed, as the defendants were on duty, in uniform, and acting in their official capacity at the time of the charged conduct.

### A. Count 1: Unreasonable Force

The government has offered sufficient evidence to prove that, while acting under color of law, each defendant willfully violated Nichols' right to be free from the use of unreasonable force by (1) personally using excessive force; (2) aiding and abetting another defendant in using excessive force; and (3) failing to intervene in another officer's use of excessive force, despite the opportunity to do so. Each of these theories of liability—direct liability, aiding-and-abetting liability, and failure-to-intervene liability—is an independent source of liability under which each defendant may be convicted for using excessive force. The government's proof included video evidence; testimony from eyewitnesses Desmond Mills and Emmitt Martin III; testimony from other witnesses who identified the defendants on video, including DeWayne Smith and Larnce

2

Wright; and testimony from the case agent about admissions by defendants Bean and Smith, establishing that:

- Defendant Smith[2]:

    o Repeatedly punched Nichols in the head (direct liability);

    o Joined defendant Bean in punching Nichols in the head (direct; aiding and abetting, failure to intervene);

    o Encouraged other officers to baton and punch Nichols by yelling "hit him!" (aiding and abetting; failure to intervene);

    o Held Nichols in place while another officer punched Nichols repeatedly in the head (aiding and abetting; failure to intervene);[3] and

    o Failed to intervene in other officers' uses of force, including kicks to Nichols' head (failure to intervene).

- Defendant Bean:

    o Repeatedly punched Nichols about the head (direct liability);

    o Joined defendant Smith in punching Nichols in the head (direct; aiding and abetting);

---

[2] Defendant Smith claims in his filing that he was blind from pepper spray during the various uses of force. That claim is unsupported by the evidence. First, no pepper spray had been deployed near defendant Smith when he first decided to unlawfully strike Nichols in the head. Second, Special Agent Anthony Householder testified that defendant Smith admitted in his proffer statement that he saw many of these uses of force, and knew they were wrong at the time. Third, there was no evidence that defendant Smith was hit with the pepper spray or incapacitated, beyond an inference that pepper spray being deployed near a person might result in them being hit. While the jury *might* be able to make that inference, the Rule 29 standard requires this Court to make all inferences in favor of the government. And there was additional undisputed evidence showing that defendant Smith was not incapacitated by the spray: his behavior and demeanor after the Nichols' incident during which there is no sign he was pepper sprayed, much less incapacitated by the spray. The evidence at trial amply supports the notion that defendant Smith could see the force being used against Nichols.

[3] Defendant Smith claims that there is no evidence that defendant Smith was involved in Emmitt Martin's punches, but the fact that defendant Smith told Martin "hit him" right before Martin punched Nichols would be enough, on its own, to support the inference that defendant Smith willfully encouraged Martin's use of force against Nichols. There is further evidence showing his involvement, however, including Special Agent Householder's testimony that defendant Smith (1) admitted that he wrongfully held Nichols up to be punched; and (2) that he saw three punches in real time and wrongfully failed to intervene.

- o   Encouraged other officers to strike Nichols by yelling "hit him!" (aiding and abetting; failure to intervene);

- o   Held Nichols in place while another officer punched Nichols repeatedly in the head (aiding and abetting; failure to intervene); and

- o   Failed to intervene in other officers' uses of force, including kicks (failure to intervene).

- Defendant Haley:

    - o   Kicked Nichols in the head (direct);

    - o   Encouraged other officers to "beat that man" (aiding and abetting; failure to intervene); and

    - o   Failed to intervene in another officer's kick to Nichols (failure to intervene).

Defendant Smith's primary argument is that there is insufficient evidence of willfulness. But the evidence of willfulness is overwhelming. First, the jury would be entitled to infer willfulness from the egregiousness of the defendants' actions themselves. *United States v. Coté*, 544 F.3d 88, 100 (2d Cir. 2008) (holding that "the nature of the force itself—repeatedly striking and kicking [the victim] in the head— suggests that [the defendant] intended to injure him rather than simply to restrain him" and supports a finding of willfulness). Second, the testimony from the defendants' trainers, who testified that the defendants' acts were inconsistent with MPD policy and training, would permit the jury to infer that defendant Smith knew what he was doing was wrong, but chose to act contrary to his training anyway. *See United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("[A]n officer's training can help inform his state of mind in certain circumstances. If, for example, an officer has been trained that officers should do certain things when confronted with tense situations, and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully."). Third, defendant Smith's

4

admissions in his proffer that Nichols was a minimal threat, that defendant Smith knew Martin's punches were wrong at the time, and that the whole incident with Nichols was wrong, would allow the jury to infer willfulness. Fourth, video evidence showing defendant Smith loudly bragging and laughing about giving Nichols "pieces" and the defendants collectively beating Nichols would allow the jury to infer that defendant Smith knew he had used more force than was necessary.

Finally, the government proved that these acts resulted in bodily injury and death through (1) eyewitness testimony from other officers, healthcare providers, and others; (2) photographs of the victim's injuries at the scene, at the hospital, and at the autopsy; and (3) the testimony of medical treatment providers and medical examiners. Contrary to defendant Smith's assertion that nothing could be done for Nichols after the blows to the head, Dr. Marco Ross testified that had Nichols been in a hospital setting sooner he could have survived the head trauma, albeit with permanent disabilities. Testimony from Yentl Evans established that more information about the nature of Nichols' injuries would have led the Memphis Fire Department to classify the incident more seriously, which would have resulted in a higher level of care and a faster response.

B.  Count 2:  Deliberate Indifference

The government offered sufficient evidence to prove that, while acting under color of law, each defendant evinced deliberate indifference to the serious medical needs of Nichols by failing to provide any information whatsoever to the dispatcher, first responders, their supervisor, hospital staff, or anyone outside the conspiracy about Nichols' traumatic injuries, including that he had been struck in the head and body.

The government proved that Nichols had serious medical needs through (1) photographs; (2) video; and (3) witness testimony about his cardiac arrest, blunt force trauma to the head, and other serious conditions and injuries.

The government proved that the defendants were deliberately indifferent to these serious medical needs through (1) video evidence showing the defendants milling around and talking amongst themselves instead of providing information or otherwise rendering aid; (2) the dispatch recording and testimony from the dispatcher showing that the defendants failed to provide any information about strikes or head injuries; (3) testimony from the two officer-eyewitnesses that none of the officers provided information or otherwise rendered aid; (4) testimony from the defendants' supervisor, a paramedic, and others that none of the defendants told them about Nichols' injuries or otherwise rendered aid; and (5) witness testimony about the defendants' own admissions, including the case agent's testimony about defendant Bean's and Smith's proffers, in which they admitted elements of this offense.

The government proved that the defendants acted willfully through (1) the testimony of officer-eyewitnesses who testified about what the on-scene officers must have known about Nichols' injuries; (2) the testimony of trainers and the defendants' supervisor, who testified about MPD policies and training about rendering aid to injured arrestees; and (3) the case agent's testimony about defendant Bean's and Smith's proffers in which they admitted elements of this offense.

The government proved that bodily injury and death resulted from this offense through the testimony of medical witnesses, including the testimony of first responders and medical personnel that head injuries and other traumatic injuries can be fatal, time is of the essence in treating such injuries, and care providers require accurate information about mechanism of injury to effectively treat such injuries.

### B. Counts 3 and 4:  Obstruction

#### A. Count 3:  Conspiracy to Obstruct Justice

To prove Count 3, the government must prove that each defendant agreed, through a mutual understanding, to cover up the defendants' use of unreasonable force. The government offered sufficient evidence to prove this through the above-described evidence about the defendants' uses of force, plus (1) the testimony of two members of the conspiracy who testified about the unspoken agreement among the defendants that they would not tell anyone outside the group about their uses of unreasonable force; (2) witnesses, including the defendants' supervisor, the MPD detective assigned to write the incident report, medical personnel, the dispatcher, and others, who testified that the defendants lied to them about their uses of force and omitted crucial information about their uses of force; (3) video evidence of the defendants' misleading actions and duplicitous conversations; and (4) text messages from defendants Bean and Haley containing admissions related to the cover-up.

B.  Count 4:  Obstruction of Justice

To prove Count 4, the government must prove that the defendants, with the intent to hamper a potential criminal investigation of their conduct, knowingly made false statements about criminal civil rights violations to, or intentionally omitted and concealed material facts about criminal civil rights violations from, their supervisor and the MPD detective tasked with writing the offense report.

The government proved that the defendants provided false and misleading information, and omitted material information, to these two individuals through the above-described evidence about what the defendants did and said, including video and eyewitness testimony, plus (1) testimony from their supervisor and the MPD detective about what the defendants did and did not tell them, and (2) the offense report reflecting the defendants' false and misleading statements and omissions.

**Conclusion**

7

The United States respectfully submits this response to the defendants' motion for an acquittal.

Respectfully submitted,

REAGAN T. FONDREN
Acting United States Attorney
DAVID PRITCHARD
ELIZABETH ROGERS
Assistant United States Attorneys
167 N. Main Street, Ste. 800
Memphis, TN 38103

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By:  s/ Andrew Manns
FORREST CHRISTIAN
Deputy Chief
KATHRYN E. GILBERT
Special Litigation Counsel
ANDREW MANNS
Trial Attorney
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 616-2430
kathryn.gilbert@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Andrew Manns, hereby certify that on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System, which sent notification of said filing to defense counsel.

s/ Andrew Manns  
ANDREW MANNS  
September 30, 2024
