IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Criminal No. 2:23-cr-20191-MSN |
| ) | |
| ) | |
| **TADARRIUS BEAN** ) | |
| ) | |
| **Defendant.** ) | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

Comes now the United States of America, by counsel, and respectfully files this memorandum in support of sentencing in this action currently scheduled for June 16, 2025. The United States may have witness testimony, as some of Mr. Nichols' family members may wish to offer victim impact statements at the hearing.

The United States concurs with the PSR's conclusion that the appropriate base offense level is 30, and that there should be a two point adjustment for role in the offense, resulting in a total offense level of 32. The United States also agrees that the defendant's sentencing range is 121-151 months. For the reasons below, particularly to recognize the seriousness of the offense and to promote general deterrence to others in law enforcement, the United States respectfully recommends that the Court sentence the defendant to 151 months as recommended by Probation.

1

I. BACKGROUND

Defendant Tadarrius Bean, and his Co-Defendants, Desmond Mills Jr., Emmitt Martin III, Demetrius Haley, and Justin Smith were all members of the Memphis Police Department's Scorpion Team. (ECF No. 2). They were charged in a four-count indictment related to the arrest and subsequent death of Tyre Nichols. *Id*. Count One charged deprivation of rights under color of law in violation of 18 U.S.C. § 242; Count Two charged deliberate indifference to medical needs in violation of 18 § U.S.C. §242; Count Three charged conspiracy to witness tamper in violation of 18 U.S.C. § 1512(k); and Count Four charged obstruction of justice through witness tampering in violation of 18 U.S.C. § 1512(b)(3). *Id*.

Prior to trial, Mills and Martin pleaded guilty to Count One, deprivation of rights under color of law resulting in death, and Count Three, conspiracy. (ECF No. 92; ECF No. 500.) After a nearly four-week trial, the jury found that defendant Bean, aided and abetted by his co-defendants, provided false and misleading information, and withheld and intentionally omitted material information, in violation of 18 U.S.C. § 1512(b)(3), as charged in Count Four. (ECF No. 627).

**A. Defendant Bean joined other officers in beating Tyre Nichols and failing to render aid to Mr. Nichols, resulting in his death.**

The evidence presented at trial showed that the assault defendant Bean attempted to cover up was a brutal one. After Mr. Nichols fled from other officers at a traffic stop, defendant Bean apprehended him by tackling him to the ground. Bean and defendant Smith repeatedly punched Nichols in the head with closed fists. Bean and Smith encouraged defendant Mills to strike Nichols with a baton. Bean and Smith held Nichols in place while defendant Martin punched him five times in the head. During voluntary proffer statements, Bean admitted that he repeatedly punched

2

Nichols in the face; specifically encouraged Martin to hit Nichols; saw Martin kick Mr. Nichols without justification; and saw Martin's punches, which were unjustified. Bean admitted that Nichols did not pose a threat to officers.

After the beating, and as discussed further below, Bean removed his body-worn camera and joined his co-defendants in bragging about their unjustified beating. Bean smiled as his co-defendants discussed striking Nichols with "haymakers" and "pieces" and "rocking" Nichols. During these conversations, Bean described Nichols "eating" the blows. Despite these admissions, when emergency medical technicians arrived moments later, Bean joined his co-defendants in failing to provide any information to them about the beating. Bean admitted during his proffers that he deliberately failed to provide this information because he did not want to "be labeled a snitch."

### B. Defendant Bean provided false and misleading information to MPD Lt. DeWayne Smith.

The evidence presented at trial showed that defendant Bean withheld and intentionally omitted information during his interactions with his supervisor, Lt. DeWayne Smith. Defendant Bean knew that Officer Martin struck Tyre Nichols in the head and that Martin and defendant Haley kicked Nichols, but he failed to report that information to Lt. Smith as required by MPD policy. Lt. Smith testified that defendant Bean failed to provide him with this information at any point, despite ample opportunity to do so. In addition, evidence presented at trial established that defendant Bean failed to provide this information to MPD dispatch or to any other MPD employee who would have notified Lt. Smith.

Body-worn camera footage captured defendant Bean actively participating in on-scene cover-up conversations and, in so doing, aiding and abetting his fellow officers in their efforts to

3

obstruct justice. For example, body-worn camera footage showed that defendant Bean first participated in a conversation in which Officer Martin admitted hitting Nichols with "straight haymakers" and other Scorpion Team officers discussed the force each had used on Nichols. Defendant Bean admitted during this conversation with his co-defendants that he knew that Nichols was "eating" these blows. When Lt. Smith arrived moments later, however, defendant Bean and the other Scorpion Team officers provided an account of the incident that omitted any reference to these punches and the apparent impact that they had on Tyre Nichols. Instead, the officers falsely claimed that Nichols was on drugs and actively resisting arrest. Defendant Bean's participation in these two conversations, which occurred within minutes of each other, demonstrated that he intentionally joined other Scorpion Team officers in providing false, misleading, and incomplete information to Lt. Smith in violation of 18 U.S.C. § 1512.

Multiple witnesses, including MPD trainers Zayid Saleem and Larnce Wright, testified that MPD policy required defendant Bean to report to his supervisor any misconduct by another officer, including the use of excessive force. Defendant Bean failed to comply both with that policy and with his training when he participated in conversations with Lt. Smith about the arrest but failed to provide his supervisor with a truthful and complete account of the force Scorpion Team officers used on Tyre Nichols. With his failure to comply with MPD policy by withholding information from his supervisor and otherwise engaging in misleading conduct, defendant Bean aided and abetted his co-defendants in obstructing justice by covering up their use of unlawful force.

### C. Defendant Bean provided false and misleading information to MPD Det. Valandria McKinnie.

Det. Valandria McKinnie testified that she spoke with defendant Bean and the other Scorpion Team officers about the Nichols' arrest; she specifically reviewed her draft report with

each of these officers; and she offered defendant Bean an opportunity to revise or correct her draft report. *See, e.g.,* (ECF No. 644, PageID 9790) (Testimony of Valandria McKinnie) ("I did talk to [Bean]."); (PageID 9776) (McKinnie reviewed her report with the Scorpion Team 1 officers); (PageID 9787) (everybody from Scorpion Team 1 was in the room, so they had an opportunity to give Det. McKinnie information); (PageID 9833) (Def. Bean didn't ask Det. McKinnie to change anything in her report). Det. McKinnie specifically recalled at trial that while defendant Bean admitted that he was at the arrest scene, he never told her about any "hitting", (ECF No. 644, PageID 9788-89), or even "anything that he did." (ECF No. 644, PageID 9789, line 14-16) ("I asked [Bean], did he have any involvement with Mr. Nichols, and he just said that he was on the scene. He didn't specify anything that he did.").

### D. Defendant Bean prepared and submitted a false and misleading Response to Resistance Report.

In his Response to Resistance Report, defendant Bean failed to accurately report his own use of force, used the same misleading verbiage as defendant Smith regarding the type of force he used, and omitted any reference to the unjustified use of force by other Scorpion Team officers. Defendant Bean's submission of a false and misleading report demonstrates that he intentionally obstructed justice during his conversations with Lt. Smith and Det. McKinnie.

In his report, defendant Bean falsely claimed that he used only "soft hands techniques." See Ex. 16 (Tadarrius Bean Response to Resistance Report). MPD Lieutenant Larnce Wright, defendant Bean's trainer, testified that "soft hands techniques" are escort techniques, like those used to move a person from one place to another, or pressure point techniques. (ECF No. 588, PageID 7868) (Testimony of Larnce Wright). Punches, by contrast, are considered to be a "hard hands" technique. *Id*. Body-worn camera footage and witness testimony established that defendant

5

Bean used "hard hands" on Nichols rather than the "soft hands" he reported to MPD. Defendant Bean had every reason to provide a false and misleading account in his report as his use of "hard hands" on Nichols was inconsistent with MPD policy. *Id.* (PageID 7887).

As proof of defendant Bean's intent to mislead MPD by providing a false description of the force used on Nichols, defendant Bean wrote in his report that he used "soft hands techniques with a closed hand," language that multiple witnesses testified was nonsensical, did not fit within MPD's training program, and did not reflect the force defendant Bean used on Nichols during his arrest. *See, e.g.,* (ECF No. 606, Page ID 8710) (Testimony of Larnce Wright) (opining that defendant Bean's report was "not accurate from what we seen on the video" and describing defendant Bean's "soft hand techniques with a closed hand" language both as nonsensical and as "not part of our training"); (ECF No. 644, PageID 9739-40) (Testimony of DeWayne Smith) (Lt. Smith said he "wasn't familiar with the phrase" that defendant Bean used in his report and was going to ask him to explain what he meant). Further, this phrasing was identical to that used by defendant Smith in his report, which provided a similarly false and misleading account of the force that defendant Smith used on Nichols. Defendant Bean's submission of a false and misleading Response to Resistance Report confirms that he intentionally provided similarly false and misleading accounts to Lt. Smith and Det. McKinnie.

At each turn on January 7, 2023, defendant Bean provided a false, misleading, and incomplete account of the Scorpion Team's use of force on Tyre Nichols. This false account by defendant Bean matched the ones initially submitted by his co-defendants, including Martin and Mills, both of whom subsequently admitted that their accounts were offered to cover up the use of excessive force.

6

**II. 18 U.S.C. § 3553(a) SENTENCING FACTORS**

Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant…
> (4) the kinds of sentence and the sentencing range established ...
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Swoope*, No. 19-20613, 2022 WL 2752796, at *2 (E.D. Mich. July 14, 2022)

The nature and circumstances of the offense are extremely troubling, and the offense conduct in this case is extraordinarily serious. While on duty as a police officer, the defendant was involved in the beating death of Tyre Nichols in January 2023. The defendant knew that his fellow officers had beaten Nichols, but he chose not to uphold his law enforcement oath to serve and protect the citizens in his community. Instead, as outlined above, he told a false story both to his supervisor and to the officer charged with generating the official report of the incident, all in order to evade accountability for a serious violation of Mr. Nichols' civil rights. Given the choice between upholding the law and violating it, then-Officer Bean chose both to commit a crime and to help his fellow officers cover up their criminal conduct.

The defendant's position as a law enforcement officer means there is a significant need for a lengthy term of incarceration to promote respect for the law. The recommended sentence will make clear that everyone, including law enforcement officials, must follow and respect the law.

7

Given the defendant's repeated lies and wrongdoing in connection with this case, the recommended sentence is necessary to reflect the seriousness of his offense and to provide just punishment.

The defendant's criminal history score, like most law enforcement officers, is zero. His law enforcement experience, however, weighs strongly in favor of imposing the recommended sentence because his "status as a law enforcement officer is . . . more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position." *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000); *see also United States v. Clay*, No. 2:21-MJ-00069, 2021 WL 1553822, at *4 (S.D.W. Va. Apr. 19, 2021) ("Much like a defendant who is alleged to have committed a crime while under court supervision, a defendant who is alleged to have committed a crime while entrusted with the responsibility and power of law enforcement has abused trust and demonstrated disdain for the laws he was charged with enforcing."). The defendant's role as a law enforcement officer meant that he should have understood the wrongfulness of his conduct, and makes his decision to use his authority as an officer to commit and cover up a violent assault an especially brazen act of disregard for the law.

Further, the need for "general deterrence is especially compelling in the context of officials abusing their power." *United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished). That is because official misconduct and obstruction "may easily go undetected and unpunished," so in the rare instance that it is ferreted out, the interest in general deterrence requires that a strong message be sent to would-be violators. *United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013); *see also United States v. George*, No. 19-4841, 2021 WL 5505404, at *6 (4th Cir. Nov. 24, 2021) (finding police officer's sentence substantively unreasonable where court

8

failed to give more than "a cursory consideration of the need to deter public officials from violating individual rights") (internal alterations). The recommended sentence will deter other police officers who would abuse their position of authority to use unnecessary force against people in their custody. Moreover, since cover-ups among law enforcement officials are especially difficult to detect and deter, there is a special need for the defendant's sentence to deter other officers from making the illegal decision to write false reports to cover up civil rights offenses.

Finally, the proposed guidelines sentence would avoid unwarranted sentencing disparities, not only with defendant Bean's codefendants, but also with other similarly situated defendants. Defendant Bean's codefendants are facing guidelines sentences of up to life in prison for committing offenses the investigation and prosecution of which defendant Bean personally and repeatedly obstructed. His obstruction offense is a profoundly serious one. For that reason, federal courts have imposed significant sentences for law enforcement officers who obstruct serious offenses. *See, e.g.*, *United States v. Lester*, Memorandum Opinion, No. 5:23-CR-00188-4, 2025 WL 1411132 (S.D.W. Va. May 15, 2025) (imposing 17.5-year sentence for defendant convicted of obstruction offenses in death-resulting criminal civil rights case); *United States v. Jones*, No. 2:22-CR-00180, 2024 WL 4507368, at *1 (S.D.W. Va. Oct. 16, 2024) (7-year sentence for defendant convicted of obstruction offense in non-death-resulting criminal civil rights case).

### III. CONCLUSION

For the reasons set forth, the United States respectfully requests that the Court, considering the sentencing factors set out in 18 U.S.C. § 3553(a), impose the recommended sentence of 151 months in prison.

Respectfully,

JOSEPH C. MURPHY
INTERIM UNITED STATES ATTORNEY

By: s/ David Pritchard
David N. Pritchard
Assistant United States Attorney
167 North Main, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
(Tennessee, BPR No. 018187)

HARMEET DHILLON
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

ANDREW MANNS
Trial Attorney
U.S. Dept. of Justice
Civil Rights Division, Criminal Section
950 Pennsylvania Ave, NW, 4CON
Washington, DC 20530
(202) 598-1581
FORREST CHRISTIAN
Deputy Chief
KATHRYN E. GILBERT
Special Litigation Counsel

cc:     Clerk of the Court (W.D. Tenn.)

## CERTIFICATE OF SERVICE

I, David Pritchard, hereby certify that on June 9, 2025, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System which sent notification of said filing to: counsel for the defendant.

s/ David Pritchard
David N. Pritchard
Assistant United States Attorney
167 North Main, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
(Tennessee, BPR No. 018187)