IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EMMITT MARTIN, III,
TADARRIUS BEAN, DEMETRIUS
HALEY, DESMOND MILLS, JR.,
AND JUSTIN SMITH

    Defendants.

CR. NO. 2:23-cr-20191-MSN-5

---

DEFENDANT, JUSTIN SMITH'S, PRE-SENTENCING HEARING MEMORANDUM
AND RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM
[ECF NO. 834]

---

COMES NOW, the Defendant, Justin Smith (hereinafter "Justin Smith") by and through counsel and files this his Pre-Sentencing Hearing Memorandum and Response to the Government's Sentencing Memorandum [ECF No.: 834] and in support of same would state as follows:

1.     Justin Smith was a model police officer. He is a model son and a model husband. On the night of January 7, 2023, let us not forget that Tyre Nichols ran from the police; he resisted the police; and he fought with the police. Justin, along with the rest of the Ridgeway precinct, received a radio call from officers needing assistance which, requires every officer in the area to respond not knowing if the officer requesting assistance has been injured or maybe even killed – not knowing the danger to be encountered from the fleeing suspect.

1

2.  Justin went to work that night when he shouldn't have medically. When he received that radio call requesting assistance, he responded. Justin had no idea what Tyre Nichols, Emmitt Martin, Preston Hemphill, and Demetrius Haley had confronted at Ross and Raines Road. Justin's job was to assist in the capture of the fleeing suspect.

3.  Justin, as a Memphis Police Department officer, has a proven track record. Witnesses appeared at trial and exposed themselves to cross-examination by the Department of Justice to tell the Court and the jury the truth that Justin treats suspects with respect and compassion.

4.  It was obvious to the undersigned from the first time the videos were watched slowly and methodically with objectivity, ignoring the media experts and their agenda, that Justin did not harm Tyre Nichols, and that Justin did not knowingly allow anyone else to harm Tyre Nichols. Justin, just like all police officers, had to rely upon his fellow police officers to obtain control of Tyre Nichols using the training that they had received coupled with the experience that they had. Justin had no way of knowing that Emmitt Martin was going to do what he did. He had no way of knowing that Tyre Nichols was going to fight and run like he did. Justin's job was solely to get the handcuffs on Tyre Nichols. That is what Justin was doing.

5.  Justin got caught up in the Biden White House Department of Justice agenda of over-charging anyone that was at Bear Creek and Castlegate that night. The Department of Justice tried them all as a group. The Department of Justice introduced evidence, with the Court's permission, of others' prior bad acts by way of 404(b) videos, and yet, not one person who testified on behalf of the Government said one negative thing about Justin. Every single Government witness, including the cooperating witnesses, actually became character witnesses for Justin. The record is full of that testimony. This Court would have to believe that Justin,

contrary to his established professional and ethical standards, would cover up the illegal conduct of another officer. While it was not Justin's duty to do so, he proved, through a cloud of witnesses, that that is not how he functioned.

6.      While the undersigned disagrees with the result of the jury verdict; what we are here about now is the sentence for that verdict, which, according to the jury, found that Justin individually; not as a part of a group conspiracy, but individually, misled, omitted, or obstructed an investigation.

7.      This Court identified in its Orders Denying Justin Smith's Rule 29 Motion areas which might have supported the jury's verdict.

## VALANDRIA MCKINNIE/MPD DETECTIVE

8.      Justin could not have taken part in omitting information or misleading Valandria McKinnie because Valandria McKinnie testified that she received **all** of her evidence for the aggravated assault charge from Emmitt Martin, and to a much lesser extent, Demetrius Haley and Preston Hemphill. There is no way that her supposed passing around her iPhone sized PDA for "anyone" who was in the room who wanted to review her report can support an obstruction of justice charge/witness tampering charge.

## DEWAYNE SMITH/MEMPHIS POLICE DEPARTMENT SUPERVISOR

9.      As it relates to misleading Lt. DeWayne Smith, the Court will recall that body cams were turned on and were operating during the arrest of Tyre Nichols. Justin went so far as to put his ballistic vest body cam on and turned it on once Tyre Nichols was in handcuffs. Tadarrius Bean had the presence of mind to turn on the audio and video on his body cam as he was chasing Tyre Nichols down the street while Tyre Nichols was running away from him. These body cams were continuing to roll the whole time and were all to be reviewed by the

Memphis Police Department. The Department of Justice actually used body cams as evidence <u>against</u> the defendants. The only person who attempted to block the capture of audio and video was Emmitt Martin when he told Desmond Mills to take off his camera. So, misleading the supervisor at the scene with body cams rolling also cannot be obstruction of justice. If Justin had erased or tampered with his body worn camera, or made phone calls to other people asking what their body cam captured, then maybe there would be support for a witness tampering charge, but there was zero evidence of Justin tampering with his body cam footage. In fact, there was overwhelming evidence to the contrary. The body worn camera videos were reviewed that very night by the Tennessee Bureau of Investigation and the Memphis Police Department.

10. As it relates to Justin's failure to inform his supervisor of the blows to the head or the kicks, it is without question by the jury's verdict and by the evidence introduced at trial that Justin never witnessed excessive force. Furthermore, it was established that if he had witnessed excessive force, he would have done exactly as he has done in the past. He would have stopped that officer from doing it, and if he could not stop it, he would have reported it. Justin had an uncontroverted history of doing just that. Lt. Smith testified about Justin's refusal to ever cover up misconduct or excessive force. By not seeing Martin's or Haley's actions, he could not report it to Lt. Smith, the EMTs or dispatchers.

## **DELIBERATE INDIFFERENCE/EMTS AND DISPATCHERS**

11. Even though the Department of Justice charged Justin with deliberate indifference to the medical needs of Tyre Nichols, the evidence showed that Justin oversaw or tried to oversee administering oxygen to Tyre Nichols not once, but three (3) times to the EMT and paramedic who were actually responsible for providing medical care. So again, Justin did the exact opposite of what he was charged with. The proof was clear, and thus the jury acquitted

4

Justin of any individual excessive force; failing to intervene or deliberate indifference to Nichols' medical needs as well as being involved in any conspiracy to commit illegal acts. Justin Smith could not mislead EMTs or dispatchers about head injuries he knew nothing about, and that truism is reflected in the jury verdict acquitting him of any individual acts toward Tyre Nichols as well as any knowledge of others' acts against Tyre Nichols.

## RESPONSE TO RESISTANCE FORM

12. Finally, the only individual act that Justin could possibly be accused of was using sloppy language in his use of force report. First, there was live testimony from Lt. DeWayne Smith that "soft hands with a closed fist" was a word salad or confusing, but that was a common occurrence amongst all police officers. Lt. Smith also testified that the Blue Team Report could be edited to clarify any confusion he may have had. That was Lt. Smith's job. The proper phrase which could have been used is the phrase "empty hard hands." Instead, Justin used "soft hands with a closed fist." Lawyers make mistakes in briefs and pleadings all of the time, and judges and lawyers can correct them. In this case, Lt. Smith testified that because the Tennessee Bureau of Investigation and Federal Bureau of Investigation swooped in so quickly, Lt. Smith and Justin were locked out of the capability to make any clarifying edits to the report.

13. Furthermore, countless witnesses, police officers, and supervisors all affirmed that the Department of Justice's allegation that Justin did not write about other officers' actions was not criminal, but actually what was required by the Memphis Police Department. The reporting officer is to <u>only</u> write about his own uses of force. Yet, Mr. Christian and the Department of Justice argued that the Memphis Police Department's published requirement was criminal in nature when obeyed by the reporting officer.

5

**DETERRENCE**

14. One might argue that sentencing Justin Smith to a term of imprisonment will serve as a general deterrent to other officers. To the contrary, any Memphis Police Department officer who knows or knows of Justin Smith, and the way he always did his job, will conclude that if Justin Smith goes to prison for the acts of Emmitt Martin and Tyre Nichols; the only thing which will be deterred is the hypothetical officers' motivation or desire to keep Memphis citizens safe from the ever rising crime levels that we all find ourselves victims of. Justin Smith did his best that night to assist in capturing an unknown fleeing suspect who was never searched for weapons before the suspect fled a traffic stop and hid from police. Justin Smith's actions may not have been text book perfect, but his efforts were not criminal or conspiratorial. The jury said so.

**SENTENCING/CROSS-REFERENCE/ACQUITTED CONDUCT**

15. What justice and fairness require is that the Court look at the facts of the case against Justin Smith when calculating Justin's sentencing guideline range.

16. The Government wants Justin's individual act of witness tampering to be cross-referenced to the act of violence of second-degree murder, and as such, attempts to treat him as an accessory after the fact to murder when the jury has spoken very clearly that Justin had nothing to do with, by way of aiding or abetting, or knowledge of, the physical harm to Tyre Nichols much less murder.

17. It is simply unjust to consider Justin's sentence for acts for which he was charged and acquitted.

18. Let us not forget that Justin Smith was charged with conspiracy to obstruct justice along with the conspiracy to take part in excessive force, individually applying excessive force, failing to intervene, and deliberate indifference. He was acquitted of those charges. To now in

any way relate his sentence to acts that the jury has acquitted him for is unjust and improper, and the U.S. Supreme Court has said as much. That is why the Sentencing Commission made their first attempt in decades to prohibit using acts for which someone is charged and acquitted in calculating the sentencing guideline. That is what we have here.

19. In this case, the convicted conduct is Witness Tampering – Obstruction of Justice, and that conviction is not <u>established</u> by any part of the charges surrounding the violence or civil rights violations of Tyre Nichols. So therefore, based upon the plain language, this Court cannot consider any of the acquitted charges in calculating the sentence for the convicted charge of Witness Tampering – Obstruction of Justice.

20. Therefore, the convicted conduct, which is Witness Tampering – Obstruction of Justice, is not established by any part of the violent crimes against Tyre Nichols or any of the civil rights violations against Tyre Nichols. The Witness Tampering charge is a stand-alone charge having nothing to do with the acts alleged in the civil rights violations. This establishes that this Court should not in any way consider the purported acts contained in the allegations of civil rights violations.

21. Then, considering the instruction relied upon by the Government which attempts to cross-reference the obstruction charge to second-degree murder, accessory after the fact, the same applies. Justin Smith was acquitted of aiding or abetting anyone involved in the violence against Tyre Nichols or the civil rights violations suffered by Tyre Nichols. To cross-reference the single count of Witness Tampering – Obstruction of Justice to the acts surrounding the civil rights violations through violence to Tyre Nichols is unjust, unfair, and unlawful.

22. The Government now apparently concedes in its most recent filing [ECF No.: 834] that a cross-reference to second-degree murder does not apply to Justin Smith. The

7

Government states "Since defendant Justin Smith committed the offense of obstruction of justice in a case <u>involving</u> a fatal, in-custody assault by law enforcement officers, the United States respectfully submits that a sentence of no less than 151 months is necessary under the factors enumerated in 18 U.S.C. § 3553."

23. Not one time in ECF No. 834 does the Government mention or argue for a cross-reference to second-degree murder. Instead, they are attempting to boot strap the Probation Office's 151-month recommendation which was arrived at by using a cross-reference to second-degree murder by claiming that it is an appropriate sentence pursuant to § 3553. Amazingly, the Government, utilizing the § 3553 standards, comes to the exact same recommended sentence of 151 months.

24. The Government is conflating two (2) separate and distinct issues. If there is no cross-reference to second-degree murder, the guideline range is not 151 months. Instead, the guideline range is established for a single conviction of a single act of witness tampering is fifteen (15) to twenty-one (21) months before any reductions which are applicable and set out in Justin Smith's earlier filed Objection to Pre-Sentence Report. The Government's bait and switch approach of realizing that a cross-reference to second-degree murder is prohibited then tries to support a 151-month recommendation by applying the § 3553 considerations. This concession without admitting that it is a concession is telling.

## **CONCLUSION**

25. So, even without considering Justin's history of being a fair, honest, honorable, just, and compassionate police officer, which were the words that the Government's witnesses used to describe Justin in the performance of his job; we have to look at the fairness of exposing himself to a trial, going through the trial, and not transforming into a dishonest cooperating

8

witness to save his own skin, to then turn right around and put Justin Smith in prison, taking him away from his son and his wife, for having anything to do with a crime he was charged with and acquitted of.

26. The just result is to calculate Justin's sentence based upon the single act of witness tampering. The undersigned's calculations for that crime are contained in Justin Smith's objections to the Presentence Report, and the Probation Office has now included, by reference, those calculations in their final addendum. The Probation Office has said that if this Court finds that a cross-reference is inappropriate, then Justin Smith's calculations are in line with the sentencing guidelines.

27. A single act of witness tampering results in an offense level of fourteen (14). Justin's role in witness tampering was so minor that he should receive a reduction in his guideline range by four (4)(Result BOL 10). He should also receive a reduction by being a first-time offender (2) because none of his actions in witness tampering caused or led to any harm or violated any of Tyre Nichols' civil rights (Result BOL 8). The reality of it is that Justin's report writing should have been an administrative charge at the Memphis Police Department level and never rise to the level of criminal charges.

28. Finally, the Court should consider, based upon Justin's past and the unrefuted testimony of not only his character witnesses but also the Government's witnesses, that any dishonesty, omissions or misleading conduct would be <u>aberrant</u> behavior on Justin's part.

29. Justin should receive probation in this case. He has done everything required of him. He has cooperated fully with Probation Services, and has come to court early and on time every time. His wife and his child live in this district, and he obviously has the support of those

9

people like retired Memphis Police Department Lieutenant and Pastor, Mark Wojcicki, who testified for Justin.

30.    Justin has already been punished more than what his role was in this case. He lost a job that he always wanted and exceeded all expectations of the Memphis Police Department. He had a spotless career with the Memphis Police Department, and now he will never be a police officer ever again just for being involved in the Tyre Nichols case. He has been without work for over two and a half years making ends meet through his wife's employment. He has not done one thing to suggest that he is a danger to the community or would flee from this district. The undersigned humbly pleads to the Court, in the interest of justice, to allow Justin, now that this case is over, and he has again stood trial in state court and acquitted of all those charges, to allow him to start putting his life back together even if that is on probation because sending him to prison will accomplish nothing.

Respectfully submitted,

*/s/Martin Zummach*
Martin Zummach #16352
Attorney for Defendant, Justin Smith
2889 Chattering Lane
Southaven, MS 38672
(901) 482-5909

CERTIFICATE OF SERVICE

The undersigned certifies that on the 13th day of June, 2025, a copy of the foregoing document was electronically filed with court clerk using the ECF System, and that upon filing, a copy will be sent via the Court's ECF System to all registered parties in this case.

*S/Martin Zummach*