IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 2:23-cr-20191-MSN |
| | ) | UNDER SEAL |
| | ) | |
| EMMITT MARTIN III | ) | |
| TADDARRIUS BEAN, | ) | |
| DEMETRIUS HALEY, and | ) | |
| JUSTIN SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' OMNIBUS RESPONSE
TO DEFENDANTS' MOTIONS FOR NEW TRIAL**

The Court should deny the defendants' motions for new trial (ECF Nos. 861, 863, 873, 900) because the defendants have failed to carry their burden of showing that the interest of justice requires a new trial. There is no evidence that the trial judge harbored any bias before or during trial, let alone the type of extreme bias that would warrant the extraordinary remedy of a new trial. The judge's rulings relied on Sixth Circuit authority and were correctly decided. In the event the Court reconsiders the defendants' post-trial motions, the Court should deny them on the papers for the reasons the United States has previously briefed.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The defendants—former Memphis Police Department (MPD) officers Emmitt Martin III, Taddarius Bean, Demetrius Haley, Justin Smith, and Demond Mills, Jr.—were charged with civil rights, conspiracy, and obstruction offenses stemming from their fatal assault of Tyre Nichols and

their efforts to cover up that assault. ECF No. 2. Defendants Mills and Martin pleaded guilty. ECF Nos. 92, 500.

Bean, Haley, and Smith proceeded to trial. At no point during trial did any defendant allege bias by the trial judge or seek his recusal. At no point did any defendant identify any improper or even disparaging remarks made by the trial judge. Neither party introduced any evidence suggesting that any defendant or any MPD officer was a gang member, nor did any party argue the same. On October 3, 2024, after a four-week jury trial, the jury returned guilty verdicts for defendants Bean, Haley, and Smith. ECF No. 627.

Five days later, on October 8, 2024, one of the law clerks involved in the trial was shot at the home of another law clerk during an aggravated burglary. ECF No. 846. After the shooting, the trial judge commented to United States Attorney's Office (USAO) management staff who were not part of the trial team in this case that (1) MPD was "infiltrated to the top with gang members" and (2) that one of the defendants was in a gang and that the gang was responsible for the shooting. *Id.* The United States disclosed that information to the defendants. *Id.* The trial judge recused himself from the case shortly thereafter. ECF No. 854.

The defendants moved for a new trial on the basis that the trial judge's post-trial comments evince unfair bias against them. ECF Nos. 872 (Defendant Bean, as joined by defendant Smith, ECF No. 873); 861 (Defendant Haley, as joined by defendant Smith, ECF No. 865); 863 (Defendant Smith).

## LAW

### I. Recusal

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," including "[w]here he has a personal bias or prejudice concerning a

2

party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) and (b). "Not all unfavorable disposition towards an individual (or his case) is properly described as bias or prejudice. Rather, there must be a wrongfulness in that the view is either undeserved or rests upon knowledge that the [judge] ought not to possess." *United States v. Parker*, 837 F. App'x 341, 346 (6th Cir. 2020) (cleaned up) (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)).

For that reason, only two types of bias merit recusal: (1) "Personal or extrajudicial" bias, *i.e.*, bias that "arises out of the judge's background and associations," or "stems from an extrajudicial source," *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999); and (2) "less commonly, a party can, in theory, show bias . . . so extreme as to display clear inability to render fair judgment." *United States v. Andrews*, No. 1:22-CR-20114-2, 2023 WL 7323202, at *3 (E.D. Mich. Nov. 7, 2023) (internal alterations) (citing *Liteky*, 510 U.S. at 555). Parties seeking recusal under this second, "extreme bias" standard "face[] an uphill battle." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016). Adverse judicial rulings alone "almost never constitute a valid basis for a bias or partiality motion." *Id.* (quoting *Liteky*, 510 U.S. at 555). Specifically, rulings that fall "within the norms of trial management," even if consistently adverse to one party, do not establish improper bias. *Id.*

## II. Post-Hoc Recusal Motions as a Basis for a New Trial

When a party seeks a new trial on the ground the trial judge abused his discretion by denying an earlier motion to recuse, or where, as here, a party raises a new, post-hoc motion for recusal, Federal Rules of Criminal Procedure 33 governs. *See, e.g.*, *United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011) (denying defendant's Rule 33 motion based on recusal claim stemming from *ex parte* communications between sentencing court and United States Attorney's

Office). Rule 33, in turn, authorizes the grant of a new trial only "if the interest of justice so requires."

Rule 33 imposes a "high bar" under any circumstances, *United States v. Collins*, No. 23-1763, 2025 WL 1029275, at *6 (6th Cir. Apr. 7, 2025), but when, as here, "there has already been a lengthy judicial proceeding, and the court has invested significant resources without a showing of any prejudice, a *post-hoc* motion for recusal 'should be supported by substantial justification, not fanciful illusion.'" *United States v. Segers*, No. 19-1497, 2024 WL 3963684, at *2 (3d Cir. Aug. 28, 2024) (upholding denial of Rule 33 motion despite *ex parte* communications between law clerk and case agent). A defendant seeking a new trial on the basis of newly alleged judicial bias must show that the new "evidence" would have affected the outcome of his trial, *United States v. Todd*, No. 3:05CR00090, 2008 WL 542972, at *5 (M.D. Tenn. Feb. 25, 2008), unless he can demonstrate that the trial judge's failure to recuse was not only error but an error of structural, constitutional magnitude. *United States v. Liggins*, 76 F.4th 500, 505 (6th Cir. 2023).

**ARGUMENT**

The defendants' motions for a new trial should be denied because the defendants have failed to demonstrate that they are entitled to the "extraordinary remedy" of a new trial. *United States v. VanDemark*, 39 F.4th 318, 322 (6th Cir. 2022). The defendants cannot show that the trial judge should have recused himself at any point before or during the trial. "To warrant recusal, [the defendants would have to] show either (1) personal or extrajudicial prejudice or (2) that intra-judicial conduct has vested 'deep-seated favoritism or antagonism' in the [trial judge] 'that would [have made] fair judgement impossible.'" *Andrews*, 2023 WL 7323202, at *6. With regard to the first showing, even assuming the trial judge's *post-trial* comments reflect improper extrajudicial

4

bias, the source of that extrajudicial bias—the unrelated shooting of one of his law clerks—arose only after trial and would therefore not support a new trial.

With regard to the second showing, the defendants have offered no evidence beyond their own speculation that the judge was biased against them at any point *before or during* trial. The defendants claim that adverse pretrial and trial rulings demonstrate the judge's alleged improper bias, but, as explained below, these rulings were correct and well "within the norms of trial management," regardless of whether they happened to be adverse to the defendants. *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016). More fundamentally, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

As the Sixth Circuit has recognized, "conclusory allegations of personal animus and ordinary trial rulings are not sufficient, without more, to require the recusal of a district court judge," much less the extraordinary remedy of throwing out the jury's verdict and ordering a new trial. *United States v. Anderson*, 84 F. App'x 513, 516 (6th Cir. 2003). The defendants ask this Court to infer or speculate about what may have been in the trial judge's mind during trial, but they have identified no basis for relief, let alone the substantial justification required to support the extraordinary remedy of a new trial. Their motions for a new trial, and their alternative requests to fish for information that might, if it existed, support such a motion, should be denied.

I. **The Defendants Cannot Show Personal or Extrajudicial Bias Before or During Trial**

*After* trial, and after a tragic and violent shooting during which the judge's law clerk was seriously injured, the judge made comments that the defendants argue demonstrate improper bias. Even assuming these comments constitute the type of extrajudicial bias that would merit recusal,

5

the "extrajudicial source" of that bias—the shooting injury of the trial judge's law clerk—arose only *after* trial. *Hartsel*, 199 F.3d at 820. By definition, that event, and any bias it caused, could not have affected the trial judge *during* trial. The defendants have also failed to identify any evidence of personal bias—that is, bias arising "out of the judge's background and associations." *Id.* Where, as here, "[t]here is no evidence to show that the judge expressed a bias or prejudice against the Defendant or maintained some preconceived notion about his guilt *prior* to [] trial," recusal is not required. *Hartsel*, 199 F.3d at 820.

## II.     The Defendants Cannot Show Any Other Improper Bias During Trial

The defendants nevertheless insist that the timing of the judge's comments suggest that he *must* have developed negative beliefs or attitudes about the defendants, or about MPD officers generally, during trial. *E.g.*, ECF No. 861 ("[I]t is simply illogical to surmise that Judge Norris didn't have the opinion that the Memphis Police Department is 'gang infested to the top' during this trial."). But they have identified no evidence supporting that assumption: despite four weeks of trial, weeks of pretrial hearings, and dozens of orders resolving hundreds and hundreds of motions, the defendants have not pointed to a single improper comment by the trial judge before or during trial. Neither party argued or implied that the defendants or MPD officers generally had any criminal gang involvement. This trial instead addressed charges that the defendants violated the civil rights of Tyre Nichols by using excessive force during his arrest. Further, even if the defendants could show that the trial judge held negative opinions of MPD officers during trial, which they cannot, most of the *government's* witnesses were MPD officers. Assuming any judicial bias existed against MPD officers, it is by no means clear that it would weigh solely or even primarily against the defendants.

### III. Even if the Trial Judge Formed Negative Opinions of the Defendants During Trial, Such Negative Opinions Do Not Constitute Improper Bias

The defendants urge this Court to assume, on the basis of speculation and inference, that the Court held negative attitudes towards them during trial. But even if there were any evidence whatsoever that the trial judge developed negative beliefs about the defendants during trial, those beliefs would not alone support recusal. Trial judges "properly and necessarily" acquire opinions of parties during trial. *Liteky*, 510 U.S. at 550; *see also United States v. Richardson*, 796 F. App'x 795, 802 (4th Cir. 2019) ("Recusal doctrine recognizes that trial judges make some of the most difficult calls on some of the most volatile matters in our system."). A trial judge "may, upon completion of the evidence, be exceedingly ill disposed towards [a] defendant, who has been shown to be a thoroughly reprehensible person." *Id.* at 550–51. That ill disposition, developed by a trial judge who has considered evidence of defendants' crimes, does not merit recusal, because the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes . . . necessary to completion of the judge's task." *Liteky*, 510 U.S. at 551.

If the judge developed beliefs about the defendants after presiding over a four-week trial during which mountains of evidence established that the defendants engaged in heinous conduct, that would be understandable. *See, e.g.*, *Richardson*, 796 F. App'x at 801 (no basis for recusal after judge made "injudicious remarks" only at sentencing, "after the presentation of perturbing testimony, photos, videos, and physical evidence"). The defendants in this case used their authority as MPD officers to needlessly escalate a traffic stop into a fatal assault during which they used closed-fist punches, kicks, and asp baton strikes to beat a young man (who had, at most, violated traffic laws, and who cried out for his mother during the beating) so badly that his organs

7

failed and he died. Then, instead of rendering aid or providing first responders with the barest modicum of information, they laughed and joked about their misconduct as Mr. Nichols' breathing slowed and then stopped. Then the defendants engaged in an elaborate cover-up conspiracy to get away with their misconduct, with some defendants confessing only after they were presented with incontrovertible video evidence. The trial judge may well have developed negative views of the defendants based on this evidence.

Where a judge develops negative opinions of a defendant, even extremely negative opinions, as a result of a defendant's *crime*, as established through evidence at trial, there is no basis for recusal. *See United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) ("The judge's comments on [the defendant's] 'heinous' crime reflected not his personal reaction to fraud against a past client. Rather, they reflected his judicial reaction to the [defendant's crime, *i.e.*] defrauding of a charity and the abuse of a position of trust."); *see also United States v. Parker*, 837 F. App'x 341, 347 (6th Cir. 2020) (finding recusal unmerited where "[t]he judge's assessment of the severity of [the] offense was an opinion based on the facts of the proceeding and prior contact with [the defendant's] related case and similar cases.").

In sum, the evidence shows, at most, that the judge's comments stemmed from (1) the shooting of his law clerk, which all parties agree occurred after trial, or (2) from the trial evidence itself. Neither provides a basis for recusal.

**IV.     The Trial Court's Rulings Do Not Support the Defendants' Post-Hoc Recusal Motion**

That leaves the defendants with the only other showing that would support their motion for a new trial based on the judge's failure to recuse himself at an earlier stage: "deep-seated favoritism or antagonism that would make fair judgment impossible," or the type of "extreme" or "pervasive"

8

bias that would render fair judgment "clearly" impossible during trial. *Liteky*, 510 U.S. at 555. The defendants cannot make this showing. The only evidence they cite for any bias *during* trial are the trial judge's evidentiary rulings, but "[j]udicial rulings alone almost never constitute a valid basis for a finding of judicial bias." *United States v. Pointer*, 93 F. App'x 752, 756 (6th Cir. 2004); *see also Liteky*, 510 U.S. at 555. Only "outrageous" rulings suggest this type of extreme bias. *Lewis v. Robinson*, 67 F. App'x 914, 923 (6th Cir. 2003).

None of the adverse rulings cited by the defendants was "outrageous"; to the contrary, each was soundly within the trial court's discretion and supported by the relevant authorities. Specifically, the trial court properly and within its discretion:

- Excluded categorically irrelevant allegations about the victim that were unknown to the defendants at the time of the charged conduct, consistent with Supreme Court case law limiting Fourth Amendment force analysis to facts known to the officer at the time;[1]

- Limited the defendants' cross-examination of the government's cooperating witnesses to disallow questioning about specific sentences faced by the defendants, consistent with case law granting trial courts discretion to impose reasonable limits on cross-examination;[2]

---

[1] Raised by defendant Haley at ECF No. 861 (Motion for New Trial) at 5.

*See* ECF No. 515 (Order Granting United States' Motion *in Limine* to Preclude Use of Inadmissible and Improper Character Evidence and Denying Defendant Martin's Motion to Admit Necessary *Res Gestae* Evidence); *see also, e.g.*, ECF No. 67 (United States' Motion *in Limine* to Preclude Use of Inadmissible Character Evidence); ECF No. 250 (United States' Opposition to Defendant Martin's Motion *in Limine* to Admit Necessary *Res Gestae* Evidence).

[2] Raised by defendants Haley at ECF No. 861 at 4-5; Smith at ECF No. 863 at 4-5; Bean at ECF No. 900 at 2.

*See* ECF No. 513 (Order on Motions Regarding Evidence of Possible Punishment) at PageID 7290-91 ("[T]he Court agrees with other courts in the Sixth Circuit that have barred the introduction of specific sentences defendants face while permitting counsel to elicit testimony about the general benefits a witness hopes to gain by testifying. *See, e.g.*, *United States v. Dimora*, 843 F. Supp. 2d 799, 842–43 (N.D. Ohio Jan. 4, 2012); *see also Langford v. Jones*, Case No. 04-CV-74335-DT, 2006 U.S. Dist. LEXIS 80900, at *18–19 (E.D. Mich. July 7, 2006). The Court finds that this balance permits Defendants to provide the jury with sufficient information with which to assess cooperating witnesses'

- Granted the government's motion to admit evidence that defendants had, on other occasions and consistent with an unwritten "street tax" practice, used excessive force against arrestees who ran from them, consistent with the Federal Rules of Evidence;[3] and

- Denied, after an evidentiary hearing, the defendants' untimely, mid-trial motion to suppress routine police reports, consistent with every federal decision to have ever considered the issue.[4]

Each of these rulings was legally sound and consistent with binding case law.[5]

As the Sixth Circuit has made clear, "the requisite showing of prejudice may not be made [even] by pointing to erroneous and atypical judicial rulings." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). Indeed, the Court has rejected recusal motions with adverse rulings and far more egregious and frequent comments made *during* trial. *See, e.g.*, *Lewis v. Robinson*, 67 F. App'x 914, 922 n.3 (6th Cir. 2003) (refusing to find improper bias despite adverse rulings, even when rulings were "viewed in conjunction with the incessant name calling and the statement to the jury"). Here, where the trial court's rulings adverse to the defendants were neither "outrageous" nor "atypical" nor even "erroneous," the defendants cannot come close to demonstrating the type of prejudice necessary to support a recusal motion. *Id.* ("[T]he pejorative

---

motives while limiting the prejudice that would attend suggestion of the sentence the remaining Defendants face."); *see also* ECF No. 299 (United States' Motion *in Limine* to Preclude Reference to Punishment).

[3] Raised by defendants Haley at ECF No. 861 at 5; Martin at ECF No. 899 at 5.

ECF No. 515 (Order Denying Defendant Demetrius Haley's Motion to Exclude Any Introduction of Alleged 404(b) Evidence and Motion *in Limine* to Prohibit the Admission of Other Acts Evidence; Order Granting the Government's Motion to Introduce Other-Acts Evidence); *see also* ECF No. 146 (United States' Notice and Motion to Introduce Other-Acts Evidence).

[4] ECF No. 673 (Trial Tr., Sept. 13, 2024), at PageID 11538-46; see also ECF No. 573 (United States' Opposition to Defendants' Untimely Mid-Trial Motion to Suppress).

[5] Defendant Haley complains about the testimony of the defendants' use-of-force trainer, Larnce Wright, ECF No. 861 at 5, but the magistrate judge, not Judge Norris, initially denied defendant Haley's motion to exclude this highly probative evidence. ECF No. 296.

connotation of the terms 'bias' and 'prejudice' demands that they only be applied to judicial predispositions that go beyond what is normal and acceptable.'") (quoting *Liteky*, 510 U.S. at 552).

## V. The Defendants Have Failed to Carry Their Burden Under Rule 33

The defendants have failed to demonstrate that a new trial would serve the "interest of justice," Fed. R. Crim. P. 33.[6] As explained above, the defendants have failed to demonstrate that the trial court should have recused itself before or during trial. Accordingly, and even if the defendants could show that the trial judge held any bias toward them at any point prior to the shooting of one of his law clerks, which they cannot, they cannot show that this information would have resulted in any different result, *i.e.*, recusal. Nor can they show that a new judge would have ruled differently on any of the rulings they cite; as explained above, each of these rulings was legally sound. *See also, e.g.*, *United States v. Todd*, No. 3:05CR00090, 2008 WL 542972, at *5 (M.D. Tenn. Feb. 25, 2008) (denying motion for new trial under Rule 33 where defendants could not show that claimed judicial bias would have affected defendant's trial outcome).

While this harmless-error standard does not apply to a structural, unconstitutional failure to recuse, *e.g.*, *Liggins*, 76 F.4th at 505, the defendants have shown no error, let alone an error of constitutional magnitude. "[M]ost matters relating to judicial disqualification do not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). Recusal motions that implicate constitutional rights are those involving "extraordinary situation[s],"

---

[6] Defendants have also sought a new trial pursuant Federal Rule of Criminal Procedure 25, ECF No. 861 at 1, 4, which recognizes that a successor judge "may determine that due to insufficient familiarity with the case, reassignment of the case at the post-verdict stage of the proceedings is not appropriate without a new trial." *United States v. Colón-Muñoz*, 318 F.3d 348, 355 (1st Cir. 2003). There is no reason this Court cannot become sufficiently familiar with the trial record, filings, and sentencing materials in this matter, particularly given the numerous filings that summarize the evidence and issues in the case, and preside over the sentencing hearing. "A successor judge's determination that he is sufficiently familiar with the record to proceed with sentencing" is committed to the discretion of the successor judge. *United States v. Winkle*, 477 F.3d 407, 420 (6th Cir. 2007).

namely, (1) financial conflicts of interest; (2) judges who acted "as a significant part of the accusatory process" before presiding over trial; or (3) "when a judge is involved in a running, bitter controversy with a litigant." *Richardson*, 796 F. App'x at 799. None of those circumstances is applicable here. Indeed, the defendants have identified no error or basis for recusal before or during trial at all, let alone any error of constitutional magnitude.

### VI. The Defendants Have Failed to Demonstrate Entitlement to Any Relief

The defendants alternatively ask the Court to hold an evidentiary hearing, ECF No. 861 at 6, and allow them to question the trial judge, his clerks, his administrative staff, the United States Marshals Service, and USAO personnel to "further explore the motivations behind the statements" by the trial judge, ECF No. 863 at 8. But "[t]here is no state or federal authority supporting [the suggestion] that [a criminal defendant] has a constitutional right to *voir dire* the trial judge." *Kordenbrock v. Scroggy*, 680 F.Supp. 867 (E.D.Ky. 1988), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1990). "A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a 'possible temptation' to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do." *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994). Here, the trial judge's trial rulings and on-the-record comments were proper and "within the norms of trial management." *Burley*, 834 F.3d at 616. The only arguable indication of improper bias—that stemming from extrajudicial sources— definitionally arose after trial (and after the defendants' initial Rule 29 motions).

The government respectfully submits that this Court should not allow the defendants to go on a fishing expedition in hopes that they may someday find some new basis to assert that the trial judge harbored any negative belief towards them during trial. As explained above, even if the

12

judge did develop a negative attitude toward one or more defendants at some point during the litigation, that attitude alone does not constitute improper bias, particularly where it stemmed from the defendants' criminal conduct.

### VII. If This Court Determines that Reconsideration of Post-Trial Motions is Necessary, this Court Should Deny the Defendants' Post-Trial Motions for the Reasons Explained in the United States' Responses

The defendants also argue that the trial judge's Rule 29 decisions are suspect in light of his post-trial comments. But the judge first denied the defendants' Rule 29 motions before the shooting incident that preceded his comments. ECF No. 690, Trial Tr., Oct. 1, 2024 at PageID 13415. Those rulings, like the above-described rulings, were wholly consistent with Supreme Court and Sixth Circuit case law. If this Court determines that it is necessary to reconsider these motions, the Court can and should deny them on the basis of the papers. *See, e.g.*, ECF Nos. 807 (Order Denying Bean Rule 29 Motion, ECF No. 661), 726 (Order Denying Smith Rule 29 Motion, ECF No. 613).

### Conclusion

The defendants have identified no improper judicial bias during trial that would entitle them to the extraordinary remedy of throwing out the jury's verdict and retrying them. The government respectfully requests that this Court deny the motions for new trial or, in the alternative, for evidentiary hearings, depositions, and other proceedings to seek new information that theoretically might, if it existed, support a motion for new trial.

Respectfully submitted,

JOSEPH C. MURPHY, JR.

13

          Interim United States Attorney
          Western District of Tennessee
          KAREN HARTRIDGE
          Assistant United States Attorney

          HARMEET K. DHILLON
          Assistant Attorney General
          Civil Rights Division
          U.S. Department of Justice

By:    s/ Kathryn E. Gilbert
          FORREST CHRISTIAN
          Deputy Chief
          KATHRYN E. GILBERT
          Special Litigation Counsel
          ANDREW MANNS
          Trial Attorney
          950 Pennsylvania Ave., NW
          Washington, DC 20530
          (202) 616-2430
          kathryn.gilbert@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Kathryn E. Gilbert, hereby certify that on the date below, I electronically filed the foregoing with the Clerk of Court for the Western District of Tennessee via the Electronic File System, which sent notification of said filing to defense counsel.

s/ Kathryn E. Gilbert  
KATHRYN E. GILBERT  
July 21, 2025